IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| MARY GREEN,[1] | § | No. 338, 2016 |
| | § | |
| Respondent Below, | § | Court Below—Family Court of the |
| Appellant, | § | State of Delaware in and for New |
| | § | Castle County |
| v. | § | |
| | § | File No. 16-01-04TN |
| DIVISION OF SERVICES FOR | § | Pet. No. 16-01494 |
| CHILDREN, YOUTH AND THEIR | § | |
| FAMILIES, | § | File No. 16-01-02TN |
| | § | Pet. No.  16-00819 |
| Petitioner Below, | § | |
| Appellee, | § | File No. 16-01-01TN |
| | § | Pet. No. 16-00454 |
| and | § | |
| | § | File No. 16-01-06TN |
| GUARDIANS AD LITEM, | § | Pet. No. 16-01499 |
| | § | |
| Appellees. | § | File No. 16-01-05TN |
| | § | Pet. No. 16-01497 |

Submitted:  December 13, 2016
Decided:     February 2, 2017

Before **STRINE**, Chief Justice; **HOLLAND** and **SEITZ**, Justices.

**O R D E R**

This 2nd day of February 2017, it appears to the Court that:

(1)    The appellant, Mary Green (hereinafter "Mother"), has appealed the

Family Court's June 3, 2016 decision terminating her parental rights to her five

---

[1] By Order dated July 1, 2016, the Court assigned a pseudonym to the appellant.  Del. Supr. Ct. R. 7(d).  This Order assigns pseudonyms to the appellant's children and to the children's fathers.

children ("the Children").[2] The four older children—Joseph, Melanie, Donna, and Daniel—were placed in the care and custody of the Division of Services for Children Youth and Their Families ("DSCYF") in January 2012. The youngest child, Dennis, was placed in DSCYF's care and custody in April 2013. The hearing for termination of parental rights ("TPR") took place over four days, in April and May 2016.

(2) The Family Court's June 3, 2016 decision terminated Mother's parental rights and the parental rights of the Children's fathers—Donald Walker (Joseph and Melanie's father) and Damian Lackman (Donna, Daniel, and Dennis' father). The decision also denied guardianship petitions filed by Mother's sister (hereinafter "Maternal Aunt") and Lackman's mother (hereinafter "Paternal Grandmother"). The fathers' parental rights and the rights of the guardianship petitioners are not at issue in this appeal.

(3) This case began on January 6, 2012, when the Family Court issued an order granting emergency custody of Joseph age seven, Melanie age six, Donna age two, and five-month-old Daniel to DSCYF. Earlier that day, DSCYF had received urgent calls concerning Mother and Lackman. The calls alleged physical neglect of the children, including no food and electricity in the home, domestic violence between Mother and Lackman, and Mother and Lackman's use of drugs.

---

[2] *Dep't of Servs. for Children, Youth & Their Families (DSCYF) v. M.G.*, 2016 WL 3570192 (Del. Fam. Ct. June 3, 2016).

2

(4)    In the ensuing dependency and neglect proceedings, Mother was appointed counsel, and the children were appointed guardians *ad litem*, one for Joseph and Melanie (Mother's children with Walker) and the other for Donna and Daniel (Mother's children with Lackman).  In March 2012, Mother entered into a case plan identifying a number of problem areas she needed to remediate to achieve reunification with the children.  The plan's significant elements addressed Mother's mental health, substance abuse, and domestic violence issues and issues related to her employment, parenting skills, legal matters, and housing, as well as the medical, educational, and mental health needs of the children.

(5)    In August 2012, the children were returned to Mother's care for a trial reunification.  DSCYF retained custody of the children during this period.  Dennis was born in October 2012.

(6)    By April 2013, Mother was having difficulty completing significant aspects of her case plan and maintaining compliance with her probation. Moreover, there were ongoing and growing concerns about the Children's welfare, especially Joseph and Melanie's school attendance.

(7)    Fearful that the Children would be removed from her care, Mother took them and fled in April 2013.  DSCYF sought and was granted emergency custody of Dennis and filed a missing person report.  In July 2013, law enforcement located the Children with Mother and Walker in the state of

3

Washington. In July 2013, the Children were returned to Delaware and placed in foster care, and in August 2013, Mother was extradited to Delaware and incarcerated. In October 2013, Mother pled guilty to felony interference with custody and violation of probation and was sentenced to two years at Level V suspended after six months. When she was released from incarceration, Mother began working on the elements of her case plan.

(8) In 2014, DSCYF filed a TPR petition against Mother (and the Children's fathers). Believing that Joseph and Melanie, then ages nine and eight, would object to the termination of their relationship with Mother, the Family Court appointed a *Frazer* attorney for them.[3] Guardianship petitions also were filed by the Maternal Aunt and the Paternal Grandmother as well as by Walker's aunt and uncle (hereinafter "Paternal Great-aunt and uncle") and a childhood friend of Mother's (hereinafter "Mother's Friend"). The guardianship petitions filed by the Maternal Aunt and Mother's Friend were dismissed in 2014.

(9) Over the course of five days, in April and May 2015, an evidentiary hearing was held on the TPR petition and the guardianship petitions filed by the Paternal Grandmother and the Paternal Great-aunt and uncle. Following the presentation of additional evidence in July 2015, the petitions were submitted for decision.

---

[3] *In re Frazer*, 721 A.2d 920 (Del. 1998). A *Frazer* attorney advocates the expressed wishes of the children.

(10) When the Family Court judge considered the evidence and wrote her decision on the question whether to terminate parental rights, she was bound to apply settled standards of law. Termination of parental rights in Delaware is based on a two-step statutory analysis. In the first step, the Family Court must determine whether there is clear and convincing evidence of a statutory basis for termination.[4] When the statutory basis for termination is an alleged failure to plan, the Family Court must determine by clear and convincing evidence that there is proof of at least one of five additional statutory conditions,[5] and that DSCYF "made bona fide, reasonable efforts to reunite the family."[6] In the second step, if the court finds a statutory basis for termination, the court must determine whether there is clear and convincing evidence that severing parental rights is in the best interest of the child.[7]

(11) On August 28, 2015, the Family Court issued a decision denying DSCYF's TPR petition and the guardianship petitions filed by the Paternal Grandmother and the Paternal Great-aunt and uncle.[8] In the seventy-seven page decision (hereinafter "the 2015 TPR Decision"), the court found that there were

---

[4] 13 *Del. C.* § 1103(a) (Supp. 2016). *Shepherd v. Clemens*, 752 A.2d 533, 537 (Del. 2000).

[5] § 1103(a)(5).

[6] *Powell v. Dep't of Servs. for Children, Youth & Their Families*, 963 A.2d 724, 737 (Del. 2008) (quoting *Newton v. Div. of Family Serv.*, 2006 WL 2852409, at *2 (Del. 2006) citing *In re Hanks*, 553 A.2d 1171, 1179 (Del. 1989))).

[7] *See* 13 *Del. C.* § 722(a)(1)–(8) (2006) (listing best interest factors). *Powell v. Dep't of Servs. for Children, Youth & Their Families*, 963 A.2d at 731.

[8] *Dep't of Servs. for Children, Youth & Their Families v. M.G.*, 2015 WL 6456760 (Del. Fam. Ct. Aug. 28, 2015).

statutory grounds for termination of Mother's parental rights, but that termination was not in the best interests of the Children.[9] The court found that the Children were strongly bonded to Mother and were not emotionally prepared to have those ties severed, despite that they could not be physically reunited with her.[10]

(12) Following the 2015 TPR Decision, a review hearing was held over two days, in October 2015 and January 2016. During that period, guardianship petitions again were filed by the Maternal Aunt and the Paternal Grandmother. And in January 2016, DSCYF again filed a TPR petition. An evidentiary hearing on the petitions was held over four days, in April and May 2016.

(13) The Family Court's June 3, 2016 decision on appeal granted DSCYF's TPR petition and denied the Maternal Aunt's and the Paternal Great-aunt and uncle's guardianship petitions.[11] In the sixty-five page decision, the Family Court incorporated its findings and conclusions from the 2015 TPR Decision regarding Mother's failure to plan and found "no significant change in her circumstances as of the conclusion of the 2016 TPR Hearings."[12] The court also found that Mother had not completed any of the requirements of her case plan despite DSCYF's efforts for reunification, and that the Children had been in the custody of DSCYF for well over one year. An excerpt from the decision provides:

---

[9] *Id.* at *37.
[10] *Id.* at *31.
[11] *Supra* note 2.
[12] *Id.* at *8.

[M]other does not appear to have the ability to successfully care for her five children in a safe and appropriate manner. She was previously unable to care for all five during the trial reunification period in late 2012, early 2013. Since the 2015 TPR Decision, there has been a complete lack of progress in her own underlying mental health issues, in addition to an inability to provide for basic physical needs such as stable housing. Mother previously had a very strong bond with her children, particularly the oldest two children, which has been weakened by Mother's failure to engage with the children's therapists, as recommended that she do prior to having continued contact with the children.[13]

(14) The Family Court then considered and made factual findings on each of the best interest factors under 13 *Del. C.* § 722 and concluded that termination of Mother's parental rights was in the Children's best interests. The court provided:

In the nine months between the issuance of the 2015 TPR Decision and the conclusion of the 2016 TPR Hearings, the children have continued to grow and mature. Following the 2015 TPR Decision, [DSCYF] worked with the children's therapists to emotionally prepare the children for the reality that reunification with their parents was no longer an option, efforts that the Court believed were important for the children's emotional welfare and which were lacking before.[14]

This appeal followed.

(15) On appeal, Mother's court-appointed counsel ("Counsel") has filed a no-merit brief and a motion to withdraw under Supreme Court Rule 26.1(c). Counsel asserts that he has made a conscientious review of the record and the law and can find no arguable grounds for appeal. Mother has not submitted any issues

---

[13] *Id.* at *11.
[14] *Id.* at *35.

7

for the Court's consideration. In response to Counsel's submission, DSCYF and the Children's court-appointed guardians *ad litem* have moved to affirm the Family Court's judgment.

(16) This Court's review of a decision to terminate parental rights requires consideration of the facts and the law as well as the inferences and deductions made by the Family Court.[15] To the extent rulings of law are implicated, our review is *de novo*.[16] To the extent issues implicate rulings of fact, we conduct a limited review of the factual findings of the Family Court to assure they are sufficiently supported by the record and are not clearly wrong.[17] This Court will not disturb inferences and deductions that are supported by the record and the product of an orderly and logical deductive process.[18] If the Family Court has correctly applied the law, our review is limited to abuse of discretion.[19]

(17) Having carefully considered the parties' submissions on appeal and the Family Court record, the Court concludes that the termination of Mother's parental rights should be affirmed on the basis of the Family Court's thorough and well-reasoned decision of June 3, 2016. We can discern no abuse of discretion in the Family Court's factual findings and no error in the court's application of the

---

[15] *Wilson v. Div. of Family Serv.*, 988 A.2d 435, 439–40 (Del. 2010) (citing cases).
[16] *Id*. at 440.
[17] *Id.*
[18] *Id.*
[19] *Id.*

8

law to the facts.  We are satisfied that Counsel made a conscientious effort to examine the record and the law and properly determined that Mother could not raise a meritorious claim on appeal.

NOW, THEREFORE, IT IS ORDERED that the judgment of the Family Court is AFFIRMED.  Counsel's motion to withdraw is moot.

BY THE COURT:

*/s/ Leo E. Strine, Jr.*

Chief Justice